UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| JEANNIE LONGWELL, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 05-316-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| JOYCE ARNOLD, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

The Petitioner, Jeannie Longwell, is pursuing a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1), claiming that the faulty jury instructions given at her trial violated her Sixth and Fourteenth Amendment rights. Specifically, Longwell alleges that the jury was unable to make a finding on all elements of the offense of complicity to commit first-degree robbery. Longwell also claims there was insufficient evidence for the jury to convict her of complicity to commit first-degree robbery.

In the context of federal habeas review, the threshold question is whether the adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002).

## I. DISCUSSION

The parties do not dispute the Kentucky Supreme Court's recitation of the facts, *see Longwell v. Commonwealth*, No. 2003-SC-0623, 2004 WL 1365995 (Ky. June 17, 2004) (unpublished), which is as follows:

At Longwell's trial, the jury heard evidence that she and her boyfriend, Ray Shively, drove to a department store in Elizabethtown, Kentucky, on December 5, 2001, and while Shively waited in the car, Longwell entered the store and shoplifted some items to sell to support her drug habit. When Longwell was confronted outside by two loss prevention managers, Shively approached, armed with two knives, and Longwell escaped to the car. Thereafter, Shively got into the passenger side of the car and Longwell sped away. After a lengthy car chase during which Longwell ran numerous traffic lights and ignored police sirens, six police cruisers blocked the car and Longwell and Shively were apprehended. When police approached the vehicle, Shively was in the passenger seat holding the stolen clothing.

On February 19, 2003, a jury convicted Longwell of one count of complicity to commit first-degree robbery, one count of first degree fleeing or evading, and of being a first-degree persistent felony offender. *Id.* at *1. She was sentenced to twenty (20) years in prison. *Id.* Shively was convicted of terroristic threatening and fleeing or evading police, but was acquitted on the first-degree robbery charge. *Id.*

On direct appeal, Longwell argued that the jury instruction on complicity to commit first-degree robbery was flawed because it did not require the jury to find that she *intended*

for Shively to use or threaten the immediate use of physical force, which is an essential element of the offense. *See id.* The relevant portions of the jury instructions, in the order they were given, are as follows:

INSTRUCTION NO. 1
DEFINITIONS

Complicity – Means that a person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he solicits, commands, or engages in a conspiracy with such other person to commit the offense, or aids, counsels, or attempts to aid such person in planning or committing the offense.

INSTRUCTION NO. 2
COMPLICITY TO COMMIT FIRST-DEGREE ROBBERY

You will find the Defendant guilty of Complicity to Commit First-Degree Robbery under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, the Defendant, alone or in complicity with another, committed all of the following:

> A. That in this county on or about December 5, 2001, and before the finding of the Indictment herein, she stole items of clothing from Proffitt's at Towne Mall, Elizabethtown, Kentucky;
>
> B. That in the course of so doing and with intent to accomplish the theft, she by herself or with the aid of Ray Shively used or threatened the immediate use of physical force upon Chad Harrod and Jonathan Goldsburg and that she acquiesced in his actions;
>
> AND
>
> C. That when she did so, Ray Shively was armed with two knives.

[R. 13 (appendix)].

The Supreme Court of Kentucky affirmed the trial court on direct appeal, noting that although section "B" of the complicity to commit first-degree robbery instruction (Instruction No. 2) erroneously failed to include the element of intent, the separate instruction defining complicity (Instruction No. 1) satisfied the intent element, and therefore, no reversible error occurred. *Longwell*, 2004 WL 1365995, at *2.

Thereafter, Longwell filed a petition for writ of habeas corpus [R. 1] in this Court pursuant to 28 U.S.C. § 2254. The Court concluded that Longwell's state-court remedies had been exhausted [R. 20] and the Magistrate Judge proceeded to the merits of her claim [R. 21]. In his report and recommendation, the Magistrate Judge found that Longwell had failed to demonstrate that the Kentucky Supreme Court's decision was contrary to clearly established federal law, [R. 21 at p. 8], and that if there was error it was harmless, *id.* at 9. The Magistrate Judge further found that Kentucky Supreme Court's decision that sufficient evidence existed to convict Longwell was not "an unreasonable application of clearly established federal law." *Id.* at 12.

Longwell objected to the Magistrate Judge's recommendation [R. 22]. On March 26, 2008, the Court held a hearing [R. 25] on Longwell's objection and gave the parties an opportunity to file post-hearing briefs [R. 27 and 28] on the issues presented at the hearing. After consideration of all of the arguments and briefing, this Court concludes that the Magistrate Judge was correct and the Petition should be denied for the reasons that follow.

**A.   The Supreme Court of Kentucky's decision is not contrary to clearly established federal law.**

Longwell first argues that the complicity instruction was contrary to clearly

established law because it did not include every element of the offense of complicity to commit first-degree robbery [R. 1, Memorandum in Support at p. 4]. *See, e.g., United States v. Gaudin*, 515 U.S. 506, 522-23 (1995) (recognizing that Constitution gives criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of *every* element of crime charged, and trial judge's refusal to allow jury to consider "materiality" of defendant's false statements infringed upon that right). A federal court may grant a writ of habeas corpus under Section 2254(d)(1)'s "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

At oral argument, Longwell, raised the following two new arguments: (1) the complicity instruction was flawed because it was ambiguous*, see Boyde v. California*, 494 U.S. 370, 380 (1990) (holding that for constitutional error to occur there must be reasonable likelihood that jury applied ambiguous instruction "in a way that prevents the consideration of constitutionally relevant evidence"), and (2) the complicity instruction and definition instruction were contradictory*, see Francis v. Franklin*, 471 U.S. 307, 322-23 (1985) (holding that when one instruction is contradictory to another on an essential element, it is impossible to tell whether the jury relied on the proper or improper instruction, and thus, the conviction must be reversed). As discussed below, neither of these arguments was presented to the Kentucky Supreme Court, and thus, are procedurally defaulted.

> **(1)    The omission of the intent requirement in the complicity instruction in the context of the overall charge and as part of the whole trial was not a constitutional error.**

Longwell argues that the trial court's failure to include the intent element in the complicity instruction was a constitutional error requiring reversal. It is well established that a jury must find a defendant guilty of *all* the elements of the crime. *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing jury instructions, however, courts do not view the contested instruction in isolation, but rather in the context of the overall charge. *United States v. Park*, 421 U.S. 658, 674 (1975)*; Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) (citing *Boyd v. United States*, 271 U.S. 104, 107 (1926)); *see also United States v. Gill*, 513 F.3d 836, 852-53 (8th Cir. 2008) (concluding that although the instructions were in error, when viewed as a whole, the instructions "adequately apprise[d] the jury of the essential elements of the offense[ ] charged and the burden of proof required of the government.") (alteration in original); *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002) (instructions failed to include one element of the crime but it was not reversible error where instructions as a whole adequately apprised the jury); *United States v. Ivey*, 949 F.2d 759, 765 (5th Cir. 1991) (stating that instructions are to be viewed as a whole when analyzing whether they provide a correct statement of law when defendant is claiming that an element is missing).

In viewing the faulty complicity instruction in the context of the instructions as a whole, this Court agrees with the Supreme Court of Kentucky's conclusion that the definition instruction cured any error. Importantly, the definition portion required that for the jury to

find Longwell guilty of complicity, it must find that she had the "intention of promoting or facilitating the commission of the offense . . . ." *See* R. 13 (appendix). As noted above, the definition section was Instruction No. 1 and preceded the complicity to commit first-degree robbery section, which was Instruction No. 2. Thus, when the jury was read the charge of complicity to commit first-degree robbery, it had already heard that for Longwell to be guilty, she must intend the promotion of such offense. While there is no question it would have been better to include the intent element in the complicity instruction, our standard of review is not what is best. In short, the Supreme Court of Kentucky was following Supreme Court precedent when it looked to the instructions as a whole to determine whether the instructions were adequate. And since a reading of the instruction as a whole demonstrates that the jury had the intent element before it, the Supreme Court of Kentucky's conclusion was not contrary to clearly established federal law. *See, e.g.*, *Park*, 421 U.S. at 674 (finding that charge as a whole sufficiently advised the jury).

Moreover, when reviewing jury instructions, this Court views the jury charge as one mere element of the entire trial. *Park*, 421 U.S. at 674. "'Often isolated statements taken from the charge, seemingly prejudicial on their face, are not so when considered in the context of the entire record of the trial.'" *Id.* at 674-75 (quoting *United States v. Birnbaum*, 373 F.2d 250, 257 (2d Cir. 1967)). Thus, not only is a challenged instruction merely one of many other instructions, but the process of instructing the jury is but one of several components of the trial which may affect the jury's decision, resulting in the conviction. *Cupp*, 414 U.S. at 146-47. In other words, a conviction is the culmination of the trial which

includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. *Id.*

This is especially relevant in a case like this where counsel's argument clearly placed the issue of Longwell's intent before the jury. During Longwell's closing argument, she conceded that she went into the store to shoplift. [R. 29 at p. 85]. Counsel then stated, "To determine that she (inaudible) complicity to commit robbery i[s] intentional, we have to find that she had a conscious objective [ ] to know that Mr. Shively was going to come up there with his knives against those two officers who had not even identified themselves." *Id.* at 85-86. Next, counsel incorporated the language in the definition section into the complicity charge: "Knowingly, on the first page of the instructions of the definitions, she had to knowingly be aware of his conduct, what he would do. She didn't know." *Id.* at 86. Counsel went on to argue that Shively did not know what Longwell was going to do and vice versa. *Id.*

The government then stated in its closing that before entering the store to shoplift, Longwell was aware of the knives because they were visible in the car, and she knew Shively was waiting in the car with access to the deadly weapons. *Id.* at 90-91. Moreover, the government stated in closing, "Remember in opening statement when I gave you the definition of complicity[;] the Commonwealth has proven the act[,] the knowledge[,] and the intent in this case now[.]" *Id.* at 91. Later in the argument, the government stated, "Complicity means that a person is guilty of an offense committed by another person when with the intention of promoting or facilitating the commission of the offense he solicits[,]

commands[,] or engages in a conspiracy with such other person to commit the offense . . . ." *Id.* at 96-97. And, then after going over the complicity to commit first-degree robbery instruction, he stated, "You can conclude from the evidence that Defendant Longwell formed the intent to commit the robbery when she saw the deadly weapons." *Id.* at 97.

Based on the combination of the instructions and arguments, it is clear that the jury had the issue of intent squarely before them. Thus, the Kentucky Supreme Court's decision is not contrary to clearly established law; indeed, it is consistent with that law.

### (2) Petitioner did not preserve her additional theories that she first raised at oral argument.

At the March 26, 2008, oral argument, Longwell argued that even if the intent element was not missing, the instructions were in error because they were (1) ambiguous and/or (2) contradictory. Neither of these theories was raised with the Kentucky Supreme Court. *See Longwell v. Commonwealth*, No. 2003-SC-0623, 2004 WL 1365995 (Ky. June 17, 2004) (unpublished).

The only two issues Longwell presented on direct appeal were: that she was denied her Sixth Amendment right to a trial by jury because the jury instructions *did not include every element* of the offense of complicity to commit first-degree robbery; and that she was denied her Fourteenth Amendment right to due process because the evidence was insufficient to convict her of complicity to commit first-degree robbery.

None of Longwell's briefs asserts the ambiguity argument presented by counsel for Longwell at the oral argument on March 26, 2008. After the hearing, Longwell did argue in her post-hearing brief that the jury instructions were contradictory and that this theory has

been a part of her claim all along. Longwell points to her state court reply brief as raising this issue. Leaving aside whether one can raise a new issue in a reply brief, that brief merely states that acquiescence does not rise to the level of intent. The Court is not convinced that the subtle reference to acquiescence can somehow morph into a claim that the complicity and definition instructions were contradictory. Because this issue was not presented to the Supreme Court of Kentucky, it is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Alley v. Bell*, 307 F.3d. 380, 385 (6th Cir. 2002) ("Federal courts can only consider on habeas review claims that a petitioner has first raised before the state courts."); *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) ("Where a petitioner has not fully and fairly presented a federal claim to the state's highest court . . ., a federal court ordinarily will not consider the merits of that claim.").

One could argue that she presented the claim – that the instructions were constitutionally defective – and that this is simply a different theory – rather than leaving out an essential element, the instructions are ambiguous or contradictory. The Sixth Circuit, however, has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the ***same theory*** in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (emphasis added); *accord Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004); *Lorraine v. Coyle,* 291 F.3d 416, 425 (6th Cir. 2002); *Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987). Petitioner did not exhaust these theories in state court and thus they are defaulted. Moreover, she has not demonstrated cause and prejudice for her failure to raise these theories in state court. *See Wainwright v. Sykes*, 433

U.S. 72, 87 (1977). Finally, these theories were not the basis of her current habeas petition. *Cf. Vasquez v. Jones*, 496 F.3d 564, 568 (6th Cir. 2007) (failure to present claim in habeas petition is waiver). In any event, for the reasons discussed below, even if the claims were properly preserved they would fail on the merits.

> **(3) The complicity instruction, although arguably ambiguous, in the context of the instructions as a whole and the trial record was not a constitutional error.**

Like an instruction lacking an element, an ambiguous jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). *Estelle* involved a jury instruction on prior act evidence that deviated in part from the model instruction. *Id.* at 71. The Court was quick to recognize that a federal habeas court will not grant relief simply because the instruction may have been ambiguous compared to the state's model instruction. *Id.* Rather, the correct inquiry is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). To violate a constitutional right, the ailing instruction has to "so infect the entire trial that the resulting conviction violates due process." *Id.* at 72 (quoting *Cupp*, 414 U.S. at 147); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) ("The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal."); *Donnelly v. DeChristoforo*,

416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]." (internal quotations omitted)).

As previously noted, although the complicity instruction in this case may not have been perfect, in looking at the instructions as a whole, there is not a reasonable likelihood that the jury applied the challenged instruction in a way that violated the Constitution. The definition instruction required that before the jury could find Longwell guilty of complicity, it had to believe that she had "the intention of promoting or facilitating" the commission of the robbery. Although the complicity instruction failed to require that Longwell "intended" that Shively commit the robbery, the intent requirement in the instruction defining complicity clarified any ambiguity that may have existed. Furthermore, within the complicity instruction itself, the jury was required to find that Longwell acquiesced in Shively's action. This belabors the point that the jury reasonably concluded that Longwell intended for Shively to pull the knives. This case is far from one where the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Moreover, as discussed above, counsel for both the government and Longwell put the issue squarely before the jury in their closing arguments. Therefore, any ambiguity did not rise to constitutionally deficient levels.

        **(4)    The instructions related to the complicity charge were not contradictory.**

Finally, Longwell argues that the Supreme Court of Kentucky's decision is contrary to the holding in *Francis v. Franklin*, 471 U.S. 307 (1985). *Francis* held that where one

instruction is contradictory to the other on an essential element of the crime, it is impossible to tell whether the jury relied on the proper or improper instruction, and thus, the conviction must be reversed. *Id.* at 322-23. Under this analysis, Longwell claims that the word "acquiesced" in the complicity instruction contradicts the language in the definition instruction, "intention of promoting or facilitating," and thus, she is entitled to habeas relief [R. 28, pp. 2-3].

*Francis* involved two instructions that were clearly contradictory, and one of which the jury could have interpreted as incorrectly placing the burden of persuasion on the defendant on an essential element of the crime. *Francis*, 471 U.S. at 318. The Court recognized that there are instances where an infirm instruction can be rescued, but concluded that this was not such a case because there was no way to determine how a reasonable juror would have resolved the contradiction. *Id.* at 319-22. For this reason, the Court noted, "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity" because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict." *Id.* at 322.

This case is distinguishable because it does not involve a set of jury instructions that at one moment forces the jury to make a determination using one method and then at the next moment instructs the jury in the opposite way. Here, the complicity instruction requiring that Longwell "acquiesced," which means she consented or complied with Shively's actions without protest, is consistent with the definition instruction, which required that Longwell

intended to promote or facilitate the commission of the robbery. *See* Webster's II New Riverside University Dictionary 74 (1994) (defining "acquiesce" as "to consent or comply without protest"). In short, unlike *Francis*, there is nothing inherently contradictory about the term "acquiesce" and the term "intent." In fact, as the Supreme Court of Kentucky pointed out, Longwell's acquiescence to Shively's use of force is evidence of her intention that he use or threaten the immediate use of physical force upon the two security guards. *Longwell,* 2004 WL 1365995, at *3. Thus, even if the Court were to reach this question, it would not be grounds for upsetting the jury's verdict in this matter.

      **B.      The Kentucky Supreme Court did not unreasonably apply clearly established federal law when it concluded that sufficient evidence existed to convict Longwell.**

Longwell's second argument is that the evidence presented against her was insufficient to prove all the elements for complicity to commit robbery. [R. 1, Mem. in Support at p. 6]. In support of this allegation, Longwell claims that the jury reached a logically incompatible conclusion when it acquitted Shively of first-degree robbery yet convicted her of complicity to commit the same offense. *Id.* at 7-8. Longwell's habeas petition cites *Jackson v. Virginia*, 443 U.S 307, 319 (1979), stating that the appropriate standard for this Court's review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Johnson v. Louisiana*, 406 U.S. 356, 362 (1972). [R. 1, Mem. in Support at pp. 6-7]. This analysis, however, is inappropriate for habeas corpus review.

The Supreme Court has declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. In its elaboration on the meaning of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. The Supreme Court of Kentucky applied a similar standard as the Supreme Court used in *Jackson v. Virginia*, 443 U.S. at 319. *Longwell v. Commonwealth*, No. 2003-SC-0623, 2004 WL 1365995, at *3 (Ky. June 17, 2004) (unpublished) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (recognizing that the standard set forth in *Commonwealth v. Sawhill*, 660 S.W.2d 3, 4 (Ky. 1983), which incorporates the language from *Jackson v. Virginia*, 443 U.S. 307 (1979), represents the law in Kentucky)). This Court's only role is to determine whether the Supreme Court of Kentucky's decision involved an unreasonable application of *Johnson v. Louisiana*, 406 U.S. at 362. 28 U.S.C. 2254(d)(1).

The Sixth Circuit recently demonstrated this important distinction in *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). In *Durr*, the court analyzed whether the state supreme court's rejection of the defendant's allegation that the prosecution presented insufficient evidence to support his rape conviction warranted habeas relief. *Id.* at 448. The court first recognized that if it were engaging in *de novo* review it would be "hard-pressed" to find that

even when reviewing the evidence in the light most favorable to the prosecution that a jury could have convicted the defendant on the facts presented. *Id.* (*see also id.* at 449 (Cole, J. concurring) ("I have my doubts whether any juror could properly infer from this evidence, beyond a reasonable doubt, that rape occurred. Nonetheless, AEDPA constrains our review, and I cannot say that the Ohio Supreme Court – even if incorrect – was *objectively unreasonable* when holding that a juror could reach that conclusion.") (emphasis in original)). But, the Sixth Circuit recognized its review was extremely limited to only considering whether the state court engaged in an unreasonable application of *Jackson*. *Id.* at 448. Moreover, the Sixth Circuit engaged in this analysis with "substantial deference" to the state supreme court because they have "considerable expertise" in matters of state criminal law. *Id*. at 449 (citing *Medina v. California*, 505 U.S. 437, 445-46 (1992) (stating that the Court "should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States")).

In considering this claim on direct appeal, the Supreme Court of Kentucky recited the evidence introduced by the Commonwealth at trial: (1) Longwell and Shively drove from Louisville to Proffitt's in Elizabethtown; (2) Longwell entered the store with the intention of shoplifting items to sell for money to support her drug habit; (2) Shively waited in the driver's seat of the car with the door open; (4) Shively, armed with two knives, approached Goldsburg and Harrod when they attempted to confront Longwell; (5) Longwell immediately thereafter ran to the car with the stolen items; (6) Longwell and Shively fled from the scene and were only apprehended after a lengthy police chase; and (7) police found Shively sitting

in the car holding the stolen merchandise. *Longwell*, 2004 WL 1365995, at *3. The Supreme Court's opinion continued, "From this evidence, the jury could have reasonably concluded that [Longwell] and Shively had planned to commit the robbery before Longwell ever entered the store. Certainly, [Longwell's] acquiescence in Shively's use of force and their subsequent flight from the store was indicia of her intent that the robbery be committed." Furthermore, the court quoted *Smith v. Commonwealth*, 5 S.W.3d 126, 129 (Ky. 1999):

> Generally, all who are present at the commission of a robbery, rendering it countenance and encouragement, and ready to assist if needed, are liable as principal actors. *To be liable, the accused need not to have taken any money from the victim with his own hands*, or actually participated in any other act of force or violence; it is sufficient that he came and went with the robbers, was present when the robbery was committed, and acquiesced therein.

*Longwell*, 2004 WL 1365995, at * 3 (citing 67 Am. Jur. 2d, Robbery § 9 p. 62) (emphasis in original). Therefore, viewing the evidence in the light most favorable to the Commonwealth, the Supreme Court of Kentucky concluded that the trial court did not err in refusing to grant Longwell's motion for a directed verdict. *Id.*[1]

---

[1] Longwell has not contested the facts in this matter. Consequently, this Court has not had to examine whether or not the Supreme Court of Kentucky's recitation of the facts is accurate and we accept them without review. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); *Cf. Loveday v. Davis*, 697 F.2d 135, 139-140 (6th Cir. 1983) (holding that when petitioner does not challenge underlying facts, court simply examines appellate recitation of facts to determine whether state court decision should be reversed).

Longwell's primary argument as to why this Court should not accept the Supreme Court of Kentucky's finding is that Shively was convicted of terroristic threatening and fleeing or evading police but acquitted of the armed robbery count. If this Court were reviewing the Supreme Court of Kentucky's decision *de novo*, that might give the Court pause. As the *Durr* court pointed out, however, this Court simply looks to see if the Kentucky Supreme Court's conclusion was contrary to, or an unreasonable application of, Supreme Court precedent. And, the United States Supreme Court has held that inconsistent verdicts are not a sufficient reason to set a verdict aside. *See Harris v. Rivera*, 454 U.S. 339, 345-46 (1981) (In a case where the jury convicted of robbery two out of three co-defendants, the Court held that inconsistency in a verdict is not a sufficient reason for setting it aside.). Similarly, the Supreme Court of Kentucky recognized this inconsistency, but pointed to its own statute on inconsistency in affirming the verdict. *Longwell*, 2004 WL 1365995, at *2-3. As *Durr* noted, its expertise in this regard is important. *See Durr*, 487 F.3d at 449. It sees these cases often and has determined, like the United States Supreme Court, that inconsistent verdicts are not alone grounds to set aside a verdict.

In conclusion, in determining whether sufficient evidence existed to support Longwell's conviction, the Supreme Court of Kentucky did not employ an unreasonable application of *Jackson*. *See Jackson*, 443 U.S. at 319. Thus, this Court must deny Longwell's habeas petition on this ground.

### III.  CONCLUSION

Throughout the Court's analysis, it remained cognizant of its role as a court performing habeas review.  And while habeas courts must exercise care and discretion when examining the record, our role is not to employ another level of appellate review.  Indeed, habeas courts should only intervene upon a showing that an individual was "grievously wronged."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Otherwise, we would "undermine[] the States' interest in finality and infringe[] upon their sovereignty over criminal matters."  *Id*.  Simply put, federal courts are not forums in which to re-litigate state trials.  *Id*. at 633; *see also Engle v. Isaac*, 456 U.S. 107, 128 (1982) (recognizing that "[t]he States possess primary authority for defining and enforcing the criminal law" and "[f]ederal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights").

In conclusion, the "extraordinary remedy" of habeas corpus is not warranted here, where the Kentucky Supreme Court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  Consequently, this Court need not undertake a harmless error review.  *Cf. Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003) (turning to harmless error review only after it found that state court "applied a rule that contradicted governing law as set forth by the Supreme Court").

It is hereby **ORDERED** as follows:

(1)   Petitioner Jeannie Longwell's writ of habeas corpus [R. 1] is **DENIED WITH PREJUDICE.**

(2)  Longwell's Objection [R. 22] to the Magistrate Judge's Report and Recommendation [R. 21] is **DENIED** and the Magistrate Judge's Recommendation is **ADOPTED.**

(3)  This Court recommends that a Certificate of Appealability **ISSUE** on both issues raised by Petitioner in her Petition.  *See* 28 U.S.C. § 2253(c).

(4)  A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

This the 2nd day of May, 2008.

Signed By:
*Amul R. Thapar*   AT
United States District Judge